UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOWARD STREPEK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 22 C 1713 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| COOK COUNTY SHERIFF TOM DART, ) | |
| CAROLYN ADAMS-WINN, and ) | |
| COOK COUNTY, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Between 2017 and 2022, Plaintiff Howard Strepek was a pretrial detainee at the Cook County Jail ("CCJ"), which the Cook County Department of Corrections ("CCDOC") operates. Strepek filed this lawsuit complaining about the dental care provided at CCJ, including the failure to provide him with prompt treatment and alleged systemic deficiencies at CCJ concerning the dental scheduling policy. Strepek has named as Defendants Cook County, Cook County Sheriff Tom Dart, and Dr. Carolyn Adams-Winn, a dentist working at CCJ. Defendants request summary judgment on the grounds that Strepek failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The Court held a *Pavey* hearing on September 26, 2025. Because Defendants have not carried their burden on their exhaustion defense, the Court denies Defendants' summary judgment motion and finds that Strepek may proceed with his claims.

## BACKGROUND

I.     **CCDOC Grievance Procedure**

CCDOC maintains a formal individuals in custody ("IIC") grievance procedure, which it outlines in the inmate handbook. IICs receive the inmate handbook upon entry. The grievance procedure instructs IICs to provide the specific date, location, and time of the problem or event that they are grieving and the names and/or identifiers of the accused person. Grievance forms are available on each living unit or through the correctional rehabilitation workers ("CRWs") assigned to the tier or housing unit. An IIC may also request a grievance form from any sworn staff member or IIC Services staff member. If a form is not available, an IIC may use any other type of paper to submit a grievance.

The grievance process requires detainees to submit a grievance form within fifteen days of the alleged offense. An IIC can give their completed grievance form directly to a CRW or a correctional supervisor when those employees make their daily rounds. During the relevant time period, IICs placed their grievances in a box or folder for a CCDOC staff member to collect. Upon receipt of a grievance form, the CRW, IIC Services supervisor, or correctional supervisor signs and dates the form and then provides the IIC with a copy of the submitted grievance. The IIC has the responsibility to keep a copy of the submitted grievance for their records.

When an IIC receives a response to their grievance, they must file an appeal within fifteen days. CCDOC requires IICs to file grievance appeals "in all circumstances" to exhaust administrative remedies. Doc. 63 ¶ 21.

II.     **Strepek's Allegations in this Case**

On October 15, 2017, Strepek entered CCJ. He moved from CCJ to the custody of the Illinois Department of Corrections on May 24, 2022. Strepek is currently housed at Hill

Correctional Center. Strepek is nearly completely deaf and has gout, arthritis, hypothyroidism, and atrial fibrillation. For this reason, for much of his time in CCDOC custody, he resided in the Residential Treatment Unit ("RTU").

When Strepek entered CCJ, he had all of his teeth except for a few molars. When he left CCJ, he had lost most of his teeth, with the remaining teeth broken and fragmented. Strepek complains that he began experiencing tooth and mouth pain around June 3, 2021. He alleges that CCDOC had a policy classifying health service requests for dental care as routine, priority, or urgent based on the level of pain described by the IIC. Strepek submitted numerous health service requests seeking treatment for his tooth and mouth pain between June 2021 and March 2022. He contends that Dr. Adams-Winn, one of the dentists at CCJ, observed and examined him but did not address his urgent tooth and mouth pain. Strepek also claims that Dart and Cook County knew that CCDOC's scheduling policy was deficient but failed to correct the obvious defects in the policy.

### III. Strepek's Grievances

On July 21, 2021, Strepek submitted a grievance about an event that occurred in RTU tier 3F. CCDOC received the grievance that day and gave it control number 202109763. In this grievance, Strepek complained that on July 18, 2021, the Division 8 3rd Floor nurse refused to answer a question he had while waiting for his evening medicine about "pus and blood oozing out [of his] teeth & gums." *Id.* ¶ 30. He further complained that, although he showed the nurse his teeth by opening his mouth, she refused to lower her mask and instead waved him off pantomiming that he should fill out a slip. *Id.* Strepek received a response to this grievance on August 11, 2021, which indicated that the nurse wore a mask to protect from COVID-19 and that Strepek should refer to the "Inmate Handbook Medical Services regarding requesting medical

services for further info." Doc. 63-6 at 3. In another grievance filed on July 21, 2021, Strepek again complained about the same nurse's refusal to lower her mask after he requested antibiotics for his teeth. CCDOC gave this second grievance control number 202109764 and similarly responded that masks were worn for everyone's protection due to the pandemic. The response further indicated that the grievance would be referred to nursing management for review and that Strepek should "[u]se the health service request process if [he] ha[d] further healthcare needs." *Id.* at 5. Strepek did not appeal either grievance.

On March 9, 2022, Strepek submitted a grievance, which he had written on March 8, 2022. CCDOC assigned this grievance control number 202203930. Strepek complained about how the "jagged sharp edges of [his] 3 remaining teeth and the shifting roots with sharp edges break[ ] thru [sic] [his] gums daily, cutting [his] cheeks and tongue, digging into the root nerve of the root of the tooth that is supposed to be above or below it," which "made chewing food a real time impossibility" and caused "constant throbbing headaches and loss of sleep, concentration." Doc. 63-7 at 2. He indicated he needed "teeth, dentures, implants, chompers something and/or anything to stop this constant physical and mental torment." *Id.* He identified the Director of Cermak Health Services of CCJ, the President of Cermak Health Cook County, and unknown individuals as those accused in the grievance. Strepek received a response on March 23, 2022, which stated "[Strepek] refused to have teeth extracted. Please refer to detainee handbook as we don't provide replacement teeth. Extractions were refused on 2/3/22." *Id.* at 4. Strepek did not appeal this response.

Before July 21, 2021, Strepek submitted and appealed six grievances at CCJ. Between the July 21, 2021 grievance and the March 9, 2022 grievance, Strepek submitted and appealed an

4

additional three grievances. In total while at CCJ, Strepek submitted forty-five grievances, including ten non-compliant grievances.

Strepek provided a declaration with his response to the motion for summary judgment indicating that he submitted many health service requests for dental care, as well as additional grievances regarding the inadequate dental care he received in the RTU. Strepek claimed that, due to the frequency with which he submitted grievances, other inmates called the box for depositing grievances the "Howie Box." Doc. 75-1 ¶ 9. He also maintained that instead of giving grievances to CRWs, RTU IICs placed grievances first in a box and then later in a manila folder. He stated that he saw social workers and counselors throw grievances into the trash, and he saw other IICs take grievances and throw them into the air or the garbage, or flush them down the toilets.

At the *Pavey* hearing, Strepek testified that he saw other IICs destroy at least twelve grievances he attempted to file between June 2021 and May 2022, stating that at least four of them had to do with dental care. He also claimed that correctional officers avoided the area where the manila folders were kept during the COVID-19 pandemic hit, collecting them about once a week, which allowed IICs to tamper with the folders and disrupt the process. He explained that he incorrectly indicated in responses to discovery that Defendants had produced all grievances he had made while at CCJ based on a misunderstanding with his counsel and that upon a full review of Defendants' document production after Defendants expressed their intent to file summary judgment as to exhaustion, he realized that he submitted additional grievances that had not been produced.

Jeremy Walton, who lived on the same tier as Strepek at CCJ, corroborated Strepek's account at the *Pavey* hearing. He testified that he recalled placing grievances in a folder, but that

5

IICs had to be careful because other IICs would go look in the folders to see if someone was snitching, and that some IICs ripped up others' grievances. Walton specifically testified that he saw IICs tear up at least one of Strepek's grievances. He also testified that during the COVID-19 pandemic, CCDOC officials did not retrieve grievances every day.

Strepek also testified that CCDOC staff told him to write healthcare requests instead of grievances with respect to his dental care issues. Specifically, Strepek claimed that a nurse named Ms. Washington told him that grievances were a waste of time and that he should instead fill out healthcare request forms. He began raising his dental complaints in this manner, in one case filling out sixteen slips over the course of one twelve-day period.

## ANALYSIS

Defendants argue that Strepek cannot proceed with his claims because he failed to exhaust his administrative remedies as required by the PLRA. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement exists to provide correctional officials with the opportunity to address complaints internally before the initiation of a federal suit. *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002); *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020). To have exhausted his administrative remedies, Strepek must have grieved his claim through "all steps that the agency holds out," and he must have "do[ne] so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). A detainee "who does not properly take each step within the administrative process has

6

failed to exhaust" administrative remedies and thus "is foreclosed by § 1997e(a) from litigating" his claims. *Pozo*, 286 F.3d at 1024.

Defendants bear the burden of proving Strepek's failure to exhaust. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018) ("It was not Davis's burden to establish that the grievance process was unavailable; it was the officers' burden to show that Davis did not exhaust available remedies."). "At *Pavey* hearings, judges may hear evidence, find facts, and determine credibility." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). "After finding facts, the district court may allow the claim to proceed or dismiss it for failure to exhaust."[1] *Id.*

Here, the record includes evidence of grievances that Strepek filed concerning dental issues on July 21, 2021 and March 9, 2022. He did not, however, appeal the responses he received to these grievances, meaning that they cannot serve as the basis for finding he exhausted his administrative remedies. *See Pozo*, 286 F.3d at 1024 (an inmate "who does not properly take each step within the administrative process has failed to exhaust" administrative remedies).

Of course, "[p]risoners need only exhaust 'available remedies, not remedies that are unavailable.'" *Jackson v. Esser*, 105 F.4th 948, 956–57 (7th Cir. 2024) (quoting *Hacker v. Dart*, 62 F.4th 1073, 1078 (7th Cir. 2023)). "If administrative remedies are genuinely unavailable or nonexistent . . . [the courts] consider the prisoner to have satisfied the exhaustion requirement." *Id.* at 957 (citing *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016)). "The 'availability' of a remedy is not a matter of what appears on paper, but, rather, whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 F. App'x 10, 13 (7th Cir. 2009). An administrative remedy is not "unavailable" if it is merely confusing or ambiguous. *See Ross*

---

[1] The Supreme Court recently concluded that a prisoner is entitled to a jury trial on the exhaustion question where genuine disputes of material fact exist that are "intertwined" with the merits of the prisoner's claims. *Perttu v. Richards*, 605 U.S. 460, 468 (2025). Because this case does not present an issue of intertwinement, however, the Court does not find that *Perttu* applies.

*v. Blake*, 578 U.S. 632, 644 (2016). Although not an exhaustive list, the Supreme Court has identified three situations where administrative remedies become unavailable: (1) where prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use," in other words, where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643; *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018).

Strepek claims that he filed grievances related to the claims he raises in this lawsuit but that they were destroyed and that CCDOC personnel instructed him to pursue his dental issues through medical request forms instead of grievances. While the parties mainly focus on Strepek's claims that CCDOC employees did not properly monitor grievance submissions during the COVID-19 pandemic and so allowed other IICs to destroy Strepek's grievances, the Court does not find it necessary to address this claim. Instead, the Court finds dispositive Strepek's contention that CCDOC personnel misled him, indicating that he should submit health service requests for dental care instead of grievances. Strepek testified that a nurse named Ms. Washington told him that grievances were a waste of time and that he should instead fill out health service request forms. He further testified that he followed this instruction, in one case filling out sixteen slips over the course of a twelve-day period. Grievance personnel echoed the direction to pursue his complaints through health care service request forms, responding to one of Strepek's July 21, 2021 grievances, grievance 202109764, that his complaint would be referred to nursing management for review and that he should use the health service request

8

process for further healthcare needs.² Given these directions, Strepek reasonably could have concluded that the normal grievance procedure was not appropriate or available to him for the purpose of exhausting his dental claims. *See Swisher v. Porter Cnty. Sheriff's Dep't*, 769 F.3d 553, 555 (7th Cir. 2014) ("When jail personnel mislead inmates about how to invoke the procedure the inmates can't be blamed for failing to invoke it."); *Hare v. Braun*, No. 22-cv-02281, 2025 WL 2770979, at *6 (S.D. Ill. Sept. 29, 2025) (receipt of "confusing instructions about exhaustion of medical grievances" raised questions about the availability of the grievance process).

Although Defendants argued that the grievance process remained available to Strepek despite instructions to use the health service request process instead, they did not rebut Strepek's evidence that he followed CCDOC instructions to pursue his dental concerns through health service request forms, not the grievance process. *See Hartsell v. Dietz*, No. 3:20-CV-588, 2023 WL 6382578, at *4 (N.D. Ind. Sept. 30, 2023) (exhaustion defense failed where the defendants did not present evidence to contradict the plaintiff's testimony that he was told by an officer that he could not grieve housing assignments). True, Strepek did file many grievances with respect to other topics, but the Seventh Circuit has warned that "[t]he ability to take advantage of administrative grievances is not an 'either-or' proposition" and that "[s]ometimes grievances are clearly available; sometimes they are not; and sometimes there is a middle ground where, for example, a prisoner may only be able to file grievances on certain topics." *Kaba v. Stepp*, 458

---

² The referral to nursing management for review also could be read as suggesting that, with respect to this specific grievance, Strepek did not need to appeal because the nursing team would address his complaint. *See Martin v. Cook Cnty. Dep't of Corr.*, No. 10 C 2162, 2013 WL 1181491, at *5 (N.D. Ill. Mar. 20, 2013) (inmate did not have to appeal response that referred his grievance to dental services where "[a] referral for dental services was exactly what Plaintiff wanted"); *Myers v. McAuley*, No. 02 C 1590, 2002 WL 31006131, at *3 (N.D. Ill. Sept. 5, 2002) ("Because the plaintiff's concerns about the lack of medical attention were supposedly being addressed and rectified by the health care unit, there would have been no reason to appeal the decision to the next level of review.").

F.3d 678, 685 (7th Cir. 2006). Given the lack of evidence that it would be unreasonable to rely on the instructions to submit health service requests, when coupled with Strepek's testimony that he did indeed follow these instructions with respect to his dental issues, the Court rejects Defendants' exhaustion defense and allows Strepek to proceed on his claims. *See Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) ("[W]e must bear in mind that failure to exhaust is an affirmative defense, and as such the burden of proof is on the defendants to establish that administrative remedies were not exhausted, and not on the prisoner to show that administrative remedies were unavailable."); *Schaefer v. Bezy*, 336 F. App'x 558, 560 (7th Cir. 2009) ("Because the prison employees bear the burden on exhaustion, they must do more than point to a lack of evidence in the record; rather they must 'establish affirmatively' that the evidence is so one-sided that no reasonable factfinder could find that Schaefer was prevented from exhausting his administrative remedies." (citation omitted)); *Merritte v. Godinez*, No. 315CV00254, 2017 WL 4174924, at *3 (S.D. Ill. Aug. 24, 2017) (finding defendants did not carry their burden on exhaustion where they did not introduce any evidence to rebut the plaintiff's statements that the grievance process was unavailable to him), *report & recommendation adopted*, No. 15-CV-254, 2017 WL 4154924 (S.D. Ill. Sept. 19, 2017).

## CONCLUSION

For the foregoing reasons, the Court rejects Defendants' exhaustion defense and allows Strepek to proceed with his claims.

Dated: February 9, 2026

SARA L. ELLIS
United States District Judge